## THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT COURT OF DELAWARE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| ) | **Civil Action No. 05-CV-0374 (GMS)** |
| Plaintiff, ) ) ) | |
| NABSTAR, LLC d/b/a SLEEP INN ) ) | |
| Defendant, ) | |

## MOTION OF DEFENDANT, NABSTAR, LLC d/b/a SLEEP INN, FOR SUMMARY JUDGMENT

Defendant, through its undersigned counsel, hereby moves this Honorable Court to enter the attached Order, granting summary judgment in its favor and against plaintiff and, in support thereof, avers as follows:

1. Defendant requests this Honorable Court to grant summary judgment in its favor and against plaintiff for the reasons set forth in its Memorandum of Points and Authorities in Support of the Motion of Defendant, Nabstar, LLC d/b/a Sleep Inn, for Summary Judgment.

**WHEREFORE,** defendant respectfully moves this Honorable Court for entry of summary judgment in its favor and against plaintiff.

          MARSHALL, DENNEHEY, WARNER,
          COLEMAN & GOGGIN

          BY:   */s/ Kevin J. Connors*
          Kevin J. Connors, Esquire #2135
          1220 North Market Street, 5th Fl.
          P.O. Box 8888
          Wilmington, DE 19899-8888
          Attorney for Defendant

Dated: April 21, 2006
\15_A\LIAB\ESTHOMPSON\LLPG\346531\ESTHOMPSON\21256\00512

THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT COURT OF DELAWARE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | **Civil Action No. 05-CV-0374 (GMS)** |
| NABSTAR, LLC d/b/a SLEEP INN ) ) | |
| Defendant, ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEFENDANT, NABSTAR, LLC D/B/A SLEEP INN, FOR SUMMARY JUDGMENT

Defendant, Nabstar, LLC d/b/a Sleep Inn ("Nabstar"), submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment.

### STATEMENT OF FACTS

Plaintiff filed instant lawsuit claiming that she was terminated because of her age in violation of the Age Discrimination I Employment Act. Plaintiff's Complaint is attached as Exhibit "A". Defendant filed an Answer with Affirmative Defenses denying liability. Defendant's Answer with Affirmative Defenses is attached as Exhibit "B". The facts set forth below are as presented during the depositions of plaintiff, Islyn Palmer, Joan Payne, General Manager of Sleep Inn, at the time of plaintiff's discharge and Jay Patel, Regional Vice-President of Nabstar, LLC, at the time of plaintiff's discharge, and Alice Y.T. Yang, President of Five-T Enterprises Inc., the prior owners of the Sleep Inn, Stephen Chen, assistant manager, and Lynn Hopkins general manager of the Sleep Inn for the prior owners.

Plaintiff was not asked her age and her age was not provided on her employment application. (Plaintiff, 23, 28). In addition, at no time was Plaintiff asked her age by any

employer, manager or owner of the hotel. (Plaintiff, 39). Plaintiff believed she was discriminated against based on her age because she believed she was the oldest person at the hotel. (Plaintiff, 39). However, she did not know the age of any other employees hired by the new owners. (Plaintiff, 40).

Mr. Patel is the regional vice-president of Sleep Inn ("the hotel") and was hired to oversee the purchase of the hotel. (Patel, 5)[1]. Nabstar purchased the hotel on August 4, 2003 from Five-T Enterprises, Inc. (Payne, 11[2]; Yang, 33[3]). The previous owners of the hotel were not very cooperative in the sale of the hotel. (Patel, 5). They did not supply staffing info and would not allow Nabstar to speak to any of the employees until the hotel was purchased. (Patel, 13-14).

The president of the company which previously owned the hotel, did not have any contact with Nabstar during the sale of the hotel, even though she resided locally at 134 Chapel Hill Drive, Newark, DE. (Yang, 2, 14). The sale was brokered on behalf of Five-T by a partner who resided in Florida. (Yang, 14). Five-T was the first owner of the hotel. (Yang, 24).

After much pleading, an orientation was permitted by Five-T on July 30, 2003. (Patel, 14). Employees attended; however, since a sign up sheet was not available, it was not known exactly who the attendees were. (Patel, 15-16). The previous owners did, however, say that some employees were not present. (Patel, 16).

At the orientation, Nabstar was permitted to inform the employees that they were purchasing the hotel and that they would like to keep most of the employees and that the employees would need to submit employment applications with Nabstar. (Patel, 16-17).

---

[1] References to the March 9, 2006 deposition of Jay Patel will be referred to as (Patel, page no.) (Exhibit "C")
[2] References to the March 9, 2006 Deposition of Joan Payne will be referred to as (Payne, page no.) (Exhibit "D")
[3] References to the March 20, 2006 deposition of Alice Y.T. Chang will be referred to as (Yang, page no.) (Exhibit "E")

Applications were usually accepted by Joan Payne; however, there were a few that were accepted by Mr. Patel. (Patel, 17-18). Plaintiff's was one of these. (Patel, 18). In accepting Plaintiff's application, Plaintiff informed Mr. Patel that she worked weekends. (Patel, 45-46). However, Mr. Patel informed her that they were looking for full-time employees. (Patel, 46).

Part-time workers are a last resort for Nabstar. (Patel, 29). Since the hotel business is a seven (7) day, twenty-four (24) hour business, Nabstar believes that in order to maintain adequate staffing and have a pool of employees from which to pull when someone does not show for work, full-time employees who are flexible are required. (Patel, 29-30). At the time of the acquisition, even though the prior owners hired numerous part time employees and were very flexible and accommodating with regards to scheduling employees, Mr. Patel was not informed by the previous owners of the existence of any part-time employees. (Patel, 30; Yang, 12-13).

Joan Payne was hired as the general manager on August 1, 2003, three days before closing was to occur. (Patel, 15; Payne, 8). Her first day on the job was August 4, 2003, the date of settlement closing. (Payne, 11). The hotel was in chaos, people were quitting and the hotel needed to be staffed. (Patel, 19-24; Payne, 18-19). Prior to August 4, 2003, Ms. Payne did not have any interaction with the employees of the hotel. (Payne, 11). In addition, Ms. Payne was not aware of the existence of any preexisting personnel files for any of the employees. (Payne, 16). Ms. Payne did not know the staff of the hotel or who was covering which shifts. (Payne, 20). None of this information was provided by the previous owners. (Patel, 13-14).

It took Nabstar approximately a month to clean up the old scheduling system and get a new system of staffing established at the hotel. (Patel, 29). In order to staff the hotel, a schedule was made using the employees that were currently in-house on the day settlement closing occurred. (Patel, 23). However, a problem occurred with regards to housekeeping , which

included the breakfast area, since closing took place at 3:00 p.m. and housekeeping was already done for the day. (Patel, 23-24). The previous head of housekeeping was a member of the prior owner's family and she left following closing or thereabouts. (Patel, 24-25). The only information she provided was that housekeeping would be in the next day. (Patel, 26). Mr. Patel was not aware of an old housekeeping schedule. (Patel, 26).

During the first week, staff from housekeeping requested a meeting with Mr. Patel to obtain an understanding of the system under the new owners. (Patel, 38-39). During this meeting, Mr. Patel informed them that the hotel was looking for full-time employees who could work flexible schedules. (Patel, 38-39, 49). He instructed his general managers to provide work to those people who wished to work full-time, were flexible and did a good job. (Patel, 41).

Plaintiff became aware that the hotel was being sold when she was called in for a meeting by Five-T. (Plaintiff, 16)[4]. She was told that only the management was to change and the employees would continue to have their jobs. (Plaintiff, 16-17). The next day Plaintiff reported to the hotel was August 9, 2003. (Plaintiff, 18).

Plaintiff had begun working for the hotel in 1997. (Plaintiff, 7) At that time, she worked five days a week, Monday thru Friday, from 8:00 a.m. to 5:00 p.m. (Plaintiff, 7). In 2000 or 2001, following Plaintiff's move to a new residence that was further away from the hotel, it became difficult for Plaintiff to work her hours because she did not drive and taking the bus was difficult. (Plaintiff, 9). Her prior residence was across the street from the hotel. Her new residence was five to ten minutes away by car. (Plaintiff, 9-10).

Following her move, Plaintiff sought employment closer to home. (Plaintiff, 12-13). She obtained employment at the Adult Active Center where she worked Monday thru Friday. (Plaintiff, 12-13). However, she continued to work every Saturday and every other Sunday at the

---
[4] References to the March 17, 2006 deposition of Plaintiff will be referred to as (Plaintiff, page no.).

hotel. (Plaintiff, 13, ). Plaintiff worked this schedule for a while and then was let go from the Active Adult Center because the center changed management. (Plaintiff, 14-15, 64-65). She did, however, continue to work her weekend schedule at the hotel. (Plaintiff, 14).

With the staffing uncertainty following the acquisition of the hotel, Marisol Gomez had been hired so that there would a definite person working the breakfast area. (Patel, 32-33). Mr. Patel was provided Ms. Gomez's application from Hawthorne Suites, of which he is also regional vice-president. (Patel, 33-35). Applications for employment are regularly shared between the hotels, depending upon the hotel's staffing needs. (Patel, 35). Mr. Patel informed Ms. Payne that if Ms. Gomez was doing a good job then keep her in the breakfast area until they found something else. (Patel, 37). Due to the need for people, if another breakfast attendant was located, then Ms. Gomez may be moved to housekeeping and do the breakfast area if the breakfast person ever failed to show for work. (Patel, 37).

When Plaintiff reported to work on August 9, 2003, another person was performing her duties. (Plaintiff, 19). She was informed that she would have to fill out an application, which she did. (Plaintiff, 21). She was then interviewed by Mr. Patel, who asked her if she was willing to work in a different department. (Plaintiff, 22-23). Plaintiff indicated that she was. (Plaintiff, 23).

Ms. Payne had never seen Plaintiff working at the hotel. (Payne, 21-22). Ms. Payne did not work weekends unless necessary, for instance when the hotel was full. (Payne, 22). The first time Ms. Payne met Plaintiff was in the middle of August, when she found out that Plaintiff was working the breakfast shift. (Payne, 22, 26). Plaintiff came in and informed Ms. Payne that she was working the breakfast that weekend and that she was upset because someone else was working the breakfast shift. (Payne, 26-27). Ms. Payne also spoke to Plaintiff about the hotel's

need for a full time person to work the breakfast shift and asked her if she would be interested in working in other areas. (Payne, 27-28).

Plaintiff's age was not a factor in her termination. (Payne, 111). Ms. Payne was not aware of Plaintiff's age, nor was she aware of whether Plaintiff was the oldest employee of the hotel. (Payne, 51-52, 69). In addition, Mr. Patel was not aware of Plaintiff's age, because Nabstar does not ask employees their ages. (Patel, 67). In fact, he is not aware of the ages of any of his employees, including Ms. Payne. (Patel, 68).

Plaintiff was terminated approximately two weeks after the sale of the hotel because her schedule did not fit in with the needs of the hotel and also because of her work ethic. (Payne, 36). Complaints were verbally received by the front desk regarding Plaintiff's work ethics in that the breakfast area was out of supplies or not clean. (Payne, 37-38, 73). These were not recorded. (Payne, 37-38). However, Plaintiff was terminated primarily because she was unable to work the schedule the hotel required. (Payne, 38, 88). Plaintiff was offered a position with housekeeping, but she was unable to work this position. (Payne, 38). The housekeeping position began a little later in the day than the breakfast position and was a full-time position. (Payne, 38-39). The hotel only hires full time employees. (Payne, 39). When Plaintiff confronted Ms. Payne, Ms. Payne felt she was disrespectful. (Payne, 47-48). However, Ms. Payne offered Plaintiff an opportunity to work if she could work full-time hours, since the hotel was not seeking part-time employees. (Payne, 48).

Plaintiff did not try to find out why she was terminated. (Plaintiff, 34). She was not even upset. (Plaintiff, 34). She just thought it was strange that she was told by the previous owners that she had a job and then someone was working in her area when she returned to work. (Plaintiff, 34).

Following Plaintiff's termination, Ms. Payne contacted Mr. Patel and informed him of her decision. (Patel, 58-61). Ms. Payne indicated that it would be difficult to schedule around Plaintiff's availability and that complaints had been received over the weekend of August 16 and 17, 2003 regarding the cleanliness of the breakfast area. (Patel, 60). Ms. Payne also informed him that Plaintiff had an attitude. (Patel, 57-60).

A conflict of schedule is considered insubordination and is not tolerated. (Patel, 61, 62-63; Payne 94-95). The Code of Conduct provided by Nabstar to Plaintiff defines insubordination as "the failure to carry out position responsibilities, reasonable work requests of management despite warnings." (Patel, 113-116). See Code of Conduct from Employee Handbook, attached as Exhibit "H". Mr. Patel interpreted this to mean that if you are asked to work a certain schedule and can't, then it is insubordination. Insubordination also included being disrespectful to a manager or co-worker and not performing your duties properly. (Patel, 116). Warnings can be in writing as well as verbal. (Patel, 117-118). Exceptions to the scheduling policy were made during the first week or two because of the chaos that existed following the purchase of the hotel by Nabstar. (Patel, 63).

Ms. Payne is now familiar with the staff employed at the Sleep Inn. Housekeeping and front desk meetings are held monthly and staff meetings are held weekly. (Payne, 19-20). There is a breakfast shift every day. (Payne, 20). Punch cards for time keeping are utilized to track employee work hours and payroll is conducted biweekly. (Payne, 30-31).

Lynn Hopkins was the general manager at the Sleep Inn prior to and at the time that the Sleep Inn was sold to defendant. (Hopkins, 5-6)[5]. She has her bachelors degree in Hotel and Restaurant Management and her masters degree in Human Resource Management. (Hopkins, 6).

---

[5] Reference to the April 11, 2006 deposition of Lynn Hopkins will be referred to as (Hopkins, page no.) (Exhibit "G")

She testified that Stephen Chen and his wife, Mei, were her assistant managers. (Hopkins, 8). During her tenure, there were two departments at Sleep Inn, front desk and housekeeping, and housekeeping staff were in charge of providing services to the breakfast area. (Hopkins, 8). Ms. Hopkins left the Sleep Inn in August 2003 when Five-T Enterprises sold the hotel to defendant and defendant brought in a general manager. (Hopkins, 10). Ms. Hopkins was told about the sale by Alice Yang one to two weeks before the sale. (Hopkins, 10). Ms. Hopkins recalled there was a meeting at the hotel between Jay and Bob Patel and employees a couple of days before the take-over. (Hopkins, 12). She and Alice Yang invited all employees to attend by work of mouth and possibly by posting a notice. (Hopkins, 12-13). Ms. Hopkins did not remember actually drafting a notice of the orientation meeting and posting it or seeing one posted. (Hopkins, 27). All employees were notified about the meeting and Alice Yang and Mei-Chen arranged the orientation meeting. (Hopkins, 13). Ms. Hopkins did not remember if Islyn Palmer was presented at the orientation meeting. (Hopkins, 14). She recalled that Jay Patel talked about his goals at the orientation meeting and told those in attendance that he would keep them on board for an orientation period which she believed was going to be for two to four weeks. (Hopkins, 14). She understood from Mr. Patel's discussion that during the orientation period, he would be evaluating employees' performance and then decide who would continue their employment and who would not. (Hopkins, 14). Ms. Hopkins showed Joan Payne filing cabinets where employee files were, but they did not go through individual personnel files. (Hopkins, 15). Ms. Hopkins did not remember whether she showed Joan Payne where employee time cards were kept. (Hopkins, 16).

     Ms. Hopkins testified that Isyln Palmer's duties as part-time breakfast attendant before the sale of the hotel consisted of coming in before breakfast started, making the coffee and

bringing out the food that was involved, cleaning the tables, restocking, and when breakfast was over, putting everything away and cleaning the breakfast area. (Hopkins, 23-24). Plaintiff did not perform any other duties besides those just described. (Hopkins, 24). Plaintiff's immediate supervisor was Stephen Chen. (Hopkins, 25). Ms. Hopkins did not ask plaintiff to work a full time schedule or work in other departments performing work other than breakfast work during her tenure. (Hopkins, 26).

Although plaintiff served as breakfast attendant with the prior owners, someone else vacuumed the breakfast area for plaintiff. (Hopkins, 29). There was also a restroom close to the breakfast area, but Ms. Hopkins generally saw Stephen Chen cleaning it and never saw plaintiff cleaning it. Hopkins, 29-30).

Ms. Hopkins recalled that plaintiff's part-time weekend schedule would alternate so that one week she would work both Saturday and Sunday and then the next week only a Saturday. (Hopkins, 31). On the weekday that plaintiff did not work, either one of the housekeepers or Mei Chen took her place. (Hopkins, 31).

Ms. Hopkins was shown a schedule made up before the sale of the hotel to defendant and she confirmed that a woman named Lorenza performed both breakfast and laundry duties, sometimes on separate days, and sometimes worked the breakfast area and assisted in the laundry area at the same time. (Hopkins, 35-36).

\* Defense counsel requested expedited transcripts of the depositions of Lynn Hopkins and Stephen Chen so that they could be referenced in the instant Motion for Summary Judgment. Through a communication breakdown, only an expedited transcript of Lynn Hopkins' deposition was delivered and defense counsel has been notified by the court reporter that the transcribed deposition of Stephen Chen will not be available until Monday, April 24, 2006. Upon receipt of

the transcript of Stephen Chen's deposition, defense counsel will supplement and/or amend the instant Motion for Summary Judgment to include reference to and the transcript of Stephen Chen's deposition.

Defendant attaches, respectively, as exhibits, the following documents for the Court's consideration in conjunction with the testimony outlined above:

Exhibit "H, - Employee Handbook – Code of Conduct;

Exhibit "I" - Receipt and Acknowledgment of Employee Handbook, signed by plaintiff;

Exhibit "J" - Warning Notice confirming termination of plaintiff;

Exhibit "K" - Letters dated 4/14/04 and 12/10/04 from Ms. Payne to the EEOC.

## ARGUMENT

Disposition through summary judgment should be encouraged, where appropriate, to bring finality to litigation in an expeditious and economical manner. Davis v. Univ. of Del., 240 A.2d 583, 584 (Del. 1968). Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Sweetman v. Strescon Indus., Inc., 389 A.2d 1319 (Del. Super. Ct. 1978). Once the moving party meets its initial burden of showing that no material issues of fact are present, the non-moving party cannot rest on its own pleadings, but must provide evidentiary material sufficient to demonstrate the existence of a disputed material fact. Phillips v. Del. Power & Light Co., 216 A.2d 281, 285 (Del. 1966).

**A.  Plaintiff Cannot Establish That She Was Discriminated Against Based Upon Her Age**

"It shall be unlawful for an employer…to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. §

623 (a)(1). However, Plaintiff must show that her age actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). A disparate treatment claim cannot succeed unless the employee's age actually played a role in the process and had a determinative influence on the outcome. *Id.*; *Fasold v. Justice*, 409 F.3d 178, 184 (3rd Cir. 2005). "There is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at 609 (Holding that the ADEA does not prevent an employer from terminating an employee based on years of service.)

Plaintiff must first establish a prima facie case of age discrimination by showing (1) she was over forty years of age, (2) she was qualified for the position in question, (3) she suffered from an adverse employment decision, and (4) that the employer replaced her with someone sufficiently younger to permit a reasonable inference of age discrimination. *Fasold*, 409 F.3d at 184. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. Upon the employer's meeting of this burden, Plaintiff must proffer evidence that discredits the employer's decision or adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Id.* Although the burden of production may shift, the ultimate burden of persuading the trier of fact remains at all times with the employee. *Id.*

Delaware adheres to the employment at-will doctrine. *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 103 (Del. 1992); *Nye v. University of Delaware*, 2006 Del. LEXIS 67, 9. An employer may terminate an at-will employment contract for its own legitimate business, or even highly subjective, reasons. *Merrill*, 606 A.2d at 103.

    **1.**     **Plaintiff is unable to establish a *prima facie* case of age discrimination**

Plaintiff was not replaced by someone who was sufficiently younger to permit a reasonable inference of age discrimination. The full-time employee was not hired to replace Plaintiff. The full-time employee who was hired to work the breakfast area was hired before Nabstar was even aware that Plaintiff was an employee of the previous owners.

The transition between owners of the hotel was anything but smooth. Nabstar was not allowed access to the employees with the exception of one orientation in which the content was limited. Nabstar was also not provided files on the employees. On August 4, the date of settlement, Nabstar did not know who would be covering what shifts or whether sufficient staff would arrive to cover the shifts. Therefore, to ensure coverage of the breakfast area, Nabstar hired a full-time person to work this area.

Plaintiff was not replaced because Nabstar did not even know she existed when they hired the full-time employee to work the breakfast area. It was during the turmoil following the acquisition of the hotel that it came to the attention of Nabstar that Plaintiff was a part-time employee who worked the breakfast area every Saturday and every other Sunday. On August 9, 2003, five days after settlement, Plaintiff arrived at the hotel and discovered that a new person was working the breakfast area. Nabstar did not know who Plaintiff was prior to this date. By this time, Nabstar had already hired the full-time employee to cover the breakfast area.

Plaintiff was permitted to work until it was realized that there was sufficient coverage and that Plaintiff was not willing to work full-time. At this time, Plaintiff's services were no longer required and she was terminated.

**2.     Plaintiff was terminated because she was not willing to work full-time.**

Plaintiff is unable to present direct evidence that she was discriminated against because of her age. Plaintiff alleges that she was subjected to disparate treatment based upon her age.

However, she testified that she was never asked her age by any employer, manager or owner of the hotel. In addition, the application for employment did not request Plaintiff's age and neither Ms. Payne nor Mr. Patel were aware of Plaintiff's age. Furthermore, Plaintiff was not aware of the ages of any of the employees with whom she worked while the hotel was owned and managed by the prior owners or the ages of the employees retained or hired by the new owners. In fact, no direct testimony was elicited that indicated that Plaintiff's age played any role in her termination or was a determinative influence.

Plaintiff is also unable to present circumstantial evidence sufficient to persuade a trier of fact that her age was more likely than not a motivating or determinative cause of her termination. Plaintiff was terminated because she was not willing to work a full-time schedule as was required by the hotel.

The hotels' decision was based on a business decision to hire full-time employees and only utilize part-time employees as a last resort. Even though the prior owners hired numerous part-time employers and were flexible and accommodating in scheduling employers, Nabstar followed a different employment structure. This was a business decision. The age of the employees had no impact on this business decision.

Plaintiff refused to work a full-time schedule. Regardless of the reasons for her refusal, which in this case was due to the distance of her residence from the hotel and the difficulty she had in getting to work regularly, Nabstar is permitted to hire employees that are able to work the schedules that it feels best suit its business needs. In this case, Nabstar believed that full-time employees who are able to work flexible schedules best suited its needs.

Plaintiff worked full time for the hotel under the prior owners until she moved to a new residence and the distance made it difficult to travel to work every day. At this time, she became

a part time employee under an employment structure which permitted employees to work part-time. Nabstar does not follow this employment structure. Nabstar only hires part-time employees as a last resort. Nabstar believes it is easier to maintain adequate staffing and staff coverage for the hotel with full-time employees who are willing to work flexible schedules.

Due to the chaotic nature of the business during the first weeks of Nabstar's acquisition of the hotel, Plaintiff was allowed to work three days. She completed an employment application and was provided an employee handbook as was required of all employees. However, when management was able to begin scheduling staff pursuant to their needs and ideas of what they felt would permit the hotel to run efficiently, they terminated Plaintiff because she was not willing to work full time. Nabstar sought a full time person to work the breakfast area, which is the area in which Plaintiff worked for the prior owner.

Since Plaintiff was not replaced by someone who was sufficiently younger to permit a reasonable inference of age discrimination, was terminated for legitimate business reasons and failed to proffer any proof otherwise, her termination is not in violation of the ADEA.

B. **The ADEA does not apply.**

Finally, defendant asserts that the ADEA does not apply such that plaintiff may not bring the instant claim, because defendant did not employ twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in 2003, the calendar year of plaintiff's termination. See 29 U.S.C. § 630 (b). Defense counsel is awaiting provision of an Affidavit from Jay Patel in support of this contention and will file it with the Court immediately upon receipt.

**WHEREFORE,** defendant respectfully moves this Honorable Court to grant summary judgment in its favor and against plaintiff.

        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN

        BY: */s/ Kevin J. Connors*
        Kevin J. Connors, Esquire #2135
        1220 North Market Street, 5th Fl.
        P.O. Box 8888
        Wilmington, DE 19899-8888
        Attorney for Defendant

DATED: April 21, 2006
\15_A\LIAB\ESTHOMPSON\LLPG\345887\ESTHOMPSON\21256\00512

## THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT COURT OF DELAWARE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) **Civil Action No. 05-CV-0374 (GMS)** ) ) ) |
| NABSTAR, LLC d/b/a SLEEP INN | ) ) |
| Defendant, | ) |

## CERTIFICATE OF SERVICE

I, Kevin J. Connors, certify that two copies of the foregoing MOTION OF DEFENDANT, NABSTAR, LLC d/b/a SLEEP INN, FOR SUMMARY JUDGMENT and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEFENDANT, NABSTAR, LLC D/B/A SLEEP INN, FOR SUMMARY JUDGMENT were served on April 21, 2006 via e-file and serve and regular mail upon the following:

Rachel M. Smith, Esquire
Equal Employment Opportunity Commission
Philadelphia District Office
21 South 5th Street-Suite 400
Philadelphia, PA 19106

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: /s/ Kevin J. Connors
Kevin J. Connors, Esquire #2135
1220 North Market Street, 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
Attorney for Defendant

\15_A\LIAB\ESTHOMPSON\LLPG\346528\ESTHOMPSON\21256\00512